## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

STEVEN CLARK,          )
                                        )
          Petitioner,        )
                                          )
          v.                 )       1:19-cv-00102-JDL
                                          )
MATTHEW MAGNUSSON,   )
                                          )
          Respondent     )

### ORDER ON MOTION TO AMEND AND
### RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

In this action, Petitioner Steven Clark, pursuant to 28 U.S.C. § 2254, seeks relief from a state court conviction and sentence. (Petition, ECF No. 1.) Petitioner asserts that his trial counsel provided ineffective assistance by failing to introduce certain evidence and call certain witnesses, among other claims. (*Id.*; Addendum, ECF No. 11.) The State argues that the state court correctly determined that counsel was not ineffective because in connection with the challenged conduct, he exercised reasonable strategic judgment and, in any event, Petitioner was not prejudiced by counsel's performance. (Answer, ECF No. 16.) The State asks the Court to dismiss the petition. After he filed the petition and after the State requested dismissal, Petitioner moved to amend the petition. (Motion, ECF No. 20.)

I grant Petitioner's motion to amend the addendum to the petition, and after a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June 2007, following a jury trial, Petitioner was convicted of one count of murder. (*State v. Clark*, Me. Super. Ct., Cum. Cty., CR-06-533, Docket Record at 3 – 4, 6.) Petitioner was sentenced to forty-three years of imprisonment. (*Id.* at 6.) The evidence showed that in February 2006, Petitioner and Robert Wagner spent a night drinking with another friend at a club before returning to Petitioner's house, where a conflict arose between Petitioner and Wagner. *State v. Clark*, 2008 ME 136, ¶ 3, 954 A.2d 1066, 1068. After the friend left, Petitioner shot Wagner twice and then sought to hide the evidence of the killing, and he enlisted his father and brother to help dispose of the body. *Id.* ¶¶ 4 – 6. Petitioner testified at trial that he shot Wagner in self-defense after Wagner held a knife to Petitioner's head; Petitioner claimed that he concealed the evidence because he feared the police as a result of prior interactions, including an occasion where Petitioner was maced and arrested. *Id.* ¶¶ 1, 5.

Petitioner sought review of his sentence and appealed from his conviction. In February 2008, the Sentence Review Panel of the Maine Supreme Judicial Court denied Petitioner leave to appeal his sentence. (*State v. Clark*, Me. Sent. Rev. Panel, SRP-07-381, Docket Record.) In August 2008, the Maine Supreme Judicial Court upheld the conviction. *Clark*, 2008 ME 136, ¶ 1.

In February 2010, Petitioner filed a state petition for postconviction review. (*Clark v. State*, Me. Super. Ct., Cum. Cty., CR-10-1339, Docket Record at 1.) After a series of evidentiary hearings between September 2014 and August 2016, the state court denied the petition in October 2018. (*Id.* at 7 – 14; Postconviction Decision.) In February 2019, the

Maine Supreme Judicial Court denied Petitioner's application for a certificate of probable cause to appeal the postconviction decision. (*Clark v. State*, Me. Law. Ct., CUM-18-454, Docket Record at 3.)

**DISCUSSION**

## A. Motion to Amend

Petitioner's motion to amend is governed by Federal Rule of Civil Procedure 15. *See* 28 U.S.C. § 2242 (habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Rules Governing Section 2254 Proceedings, Rule 12 (providing that the Federal Rules of Civil Procedure apply, to the extent they are not inconsistent with statutory provisions or the Rules Governing Section 2254 Proceedings).

Rule 15(a)(1) permits a litigant to amend a pleading "once as a matter of course," subject to certain time constraints. Fed. R. Civ. P. 15(a)(1). However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Although the original petition contained only one ground for relief, Petitioner referred to an "addendum to petition under separate cover" because the claims were too extensive to list in the standard form. (Petition at 7.) Because the Court did not initially receive an addendum, on March 14, 2019, the Court instructed Petitioner to file his supplemental claims by April 5, 2019. (Order, ECF Nos. 5, 7.) On April 10, 2019, Petitioner filed a motion to extend the time to supplement the petition, which motion Petitioner dated April 4. (ECF No. 8.) Petitioner asserted that his access to his legal materials and a typewriter were restricted due to a quarantine at the Maine State Prison. On April 11, 2019, the Court extended the deadline to April 26. (*Id.*; Order, ECF No. 9.)

On May 2, 2019, Petitioner filed another motion to extend the deadline, which motion Petitioner dated April 25. (ECF No. 10.) Petitioner explained that he might miss the deadline for supplementing the Petition because he needed to get photocopies and could not do so until April 26. (*Id.*) Also on May 2, 2019, Petitioner filed a forty-six-page Addendum, dated April 26, with nine additional grounds for relief and numerous subparts. (Addendum, ECF No. 11.) In addition, Petitioner attached a copy of another forty-one-page addendum that he had previously filed with the state postconviction court. (State Postconviction Addendum, ECF No. 11-1.) On May 6, 2019, I granted Petitioner's second motion to extend the deadline and accepted Petitioner's filings. (Order, ECF No. 12.) On the same day, I ordered the State to respond to Petitioner's filings. (Order to Answer, ECF No. 13.)

On May 16, 2019, Petitioner filed a motion, dated April 29, seeking leave to file a "Memorandum of Law" and asserting the same photocopy-related reason for delay.

4

(Letter/Motion, ECF No. 14.)  Interpreting this request for an additional filing as referring to the same Addendum that had already been accepted, the Court denied that motion as moot on May 17, 2019.  (Order, ECF No. 15.)  Apparently, however, within his addendum, Petitioner referred to a "Memorandum of Law" that he intended to be another document in support of his petition.  (Addendum at 14, 38.)

The State filed its response to the Petition and the Addendum on June 20, 2019. (Answer, ECF No. 16.)  On June 24, 2019, Petitioner filed a motion to clarify the status of his filings. (ECF No. 18.)  In that motion, Petitioner expressed concern that the Court did not docket or did not receive his memorandum of law.  (*Id.*)  Petitioner did not include a copy of a memorandum, instead offering to send it within two days of notification from the Court.  (*Id.*)  On June 25, 2019, the Court clarified that the petition and the supplement had been docketed.  (Order, ECF No. 19.)

On July 5, 2019, Petitioner filed a motion to amend the Addendum, which motion Petitioner dated June 28.  (ECF No. 20.)  Petitioner asserted that he sent his Memorandum of Law to the Court and the State on April 29, 2019, three days after sending his Supplement. (*Id.* at 1.)  Neither the Court nor the State received a memorandum. (*See* Response to Motion to Amend, ECF No. 21.)  After seeking and obtaining an extension of time to file his reply to the State's answer, Petitioner filed a reply on August 6, 2019.  (ECF Nos. 22 – 24.)  Finally, on August 12 and August 26, 2019, Petitioner filed a two-part, 116-page Memorandum of Law in connection with his prior motion to amend his Addendum. (Memorandum of Law, ECF Nos. 25, 27.)  Petitioner apparently sent the documents on August 1, but maintains he originally sent them on April 29.

Petitioner's filings generate some legitimate questions about Petitioner's efforts to comply with the filing deadlines. The Addendum resembles a typical memorandum of law, with detailed factual descriptions and legal arguments, rather than the short plain statements found in a form petition which is ordinarily accompanied by a separate memorandum. The circumstances—including a series of requests for extensions of time, the repeated use of the same justification for delay, and the failure to include the Memorandum for several months—raise the possibility that Petitioner attempted to circumvent or effectively extend the Court's filings deadlines without a legitimate basis.

Nevertheless, challenges presented by the prison mail system could conceivably result in an oversight or mistake in the filing of the Memorandum of Law. In addition, Petitioner's pro se status might explain the confusion between terms like "addendum," "supplement," and a "memorandum" when he amended the petition. Because Petitioner's Memorandum of Law largely presents case authority and reiterates factual accounts included in the state court record, I grant Petitioner's motion to amend and consider his Memorandum of Law in assessing the petition.

**B.      Legal Standards for § 2254 Petition**

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C.

§ 2254(b), (c).[1] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

---

[1] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > **(A)** the applicant has exhausted the remedies available in the courts of the State; or
> >
> > **(B) (i)** there is an absence of available State corrective process; or
> >
> > **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The Supreme Court has held that a procedural default bars federal review absent a demonstration of cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[2]

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to its holding in *Coleman*, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 16. However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

---

[2] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

*Martinez*, 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[3]

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* --- U.S. ---, ---, 136 S. Ct. 1149, 1151

_____

[3] Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  State court

determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have

the burden of rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1).[4]

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard

by which claims of ineffective assistance based on counsel's errors are evaluated on the

merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell

below an objective standard of reasonableness," and that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  *Strickland*, 466 U.S. at 688, 694.  A court need not "address both

components of the inquiry if the defendant makes an insufficient showing on one."  *Id.*

at 697.  A court presumes "that counsel has 'rendered adequate assistance and made all

_____

[4] The decision under review in this case is the Law Court's order denying a certificate of probable cause, because the Law Court's decision is the final state court adjudication on the merits.  *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## C.    Review Under Section 2254(d)

Petitioner contends the Court should review many of his claims de novo, rather than under the more deferential review of state court decisions contemplated by 28 U.S.C. § 2254(d), because, according to Petitioner, the state postconviction court did not address the merits of some of his claims. The record reflects that the postconviction court addressed at length all the claims to which Petitioner's postconviction counsel directed significant argument and briefing, and also addressed Petitioner's other claims. Indeed, the state court acknowledged that Petitioner had presented numerous grounds and explained, "To the extent this decision does not address a specific ground, the Court finds that ground was not properly supported and is summarily dismissed." (Postconviction Decision at 2 n.2.)

"A matter is 'adjudicated on the merits,' giving rise to deference under § 2254(d) of AEDPA,[5] if there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other,

_____

[5] The Antiterrorism and Effective Death Penalty Act of 1996.

ground." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 66 (1st Cir. 2009) (quotation omitted).

Because § 2254(d) "refers only to a 'decision,' which resulted from an 'adjudication,'"

there is no requirement that a state court offer a statement of reasons in support of a decision

for that decision to be "on the merits." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The

Supreme Court has noted that "there are instances in which a state court may simply regard

a claim as too insubstantial to merit discussion." *Johnson v. Williams*, 568 U.S. 289, 299

(2013). Therefore, when a state court denies relief without expressly addressing every

federal claim, "a federal habeas court must presume that the federal claim was adjudicated

on the merits," unless that presumption is rebutted. *Id.* at 301.

The record lacks any evidence that would rebut the presumption of an adjudication

on the merits. To the contrary, the state postconviction court discussed in detail the merits

of most of Petitioner's claims and made clear that the remaining claims were rejected on

the merits. Accordingly, the § 2254(d) standard applies.

**D. Ineffective Assistance of Counsel Claims and Analysis**[6]

**1. Jury Instructions**

Petitioner contends his trial and appellate counsel erred by failing to object to the

trail court's jury instructions concerning self-defense, intoxication, the lesser included

---

[6] Petitioner asserts some of the same claims in different sections and under different headings of his filings. Petitioner also presents several numbered grounds that do not contain claims for relief, but instead make arguments about whether AEDPA deference or de novo review is the proper standard for some of his other claims. Similarly, some of Petitioner's separately numbered grounds challenge the same issue but address either the postconviction court's decision or the Law Court's order declining to allow a challenge to the lower decision. The separately numbered grounds represent the same claims because federal courts review the final decision of the state courts as a whole, only looking to prior state court decisions for the reasoning underlying unexplained decisions. *See supra*, n. 4. The issues in this recommended decision are discussed based on the substantive claims rather than as individually numbered in Petitioner's documents.

offense of manslaughter, and the State's burden of proof. (Petition at 5, Memorandum at 12 – 49.) The state court summarily rejected Petitioner's claim.[7] Petitioner's arguments largely involve isolated or improbable parsing of certain words and phrases out of context. For example, Petitioner faults the trial court for substituting the phrase "established" in one sentence for the phrase "proof beyond a reasonable doubt," (Memorandum at 23), even though the trial court properly instructed on reasonable doubt standard on several occasions and, therefore, correctly explained the proof necessary to "establish" the fact in question. Petitioner's counsel was not substandard for declining to object to the jury instructions and Petitioner was not prejudiced by that decision. The state court's decision summarily rejecting the claims was not contrary to or an unreasonable application of clearly established federal law.[8]

### 2. Fear of Wagner

Petitioner argues that his trial counsel was ineffective for declining to: (1) elicit additional testimony from Petitioner regarding specific instances of Wagner's volatility, (2) call other witnesses to testify about specific instances of Wagner's volatility, and (3) call other witnesses to testify about Wagner's reputation for violence. (Addendum at 2 – 14; Memorandum at 50 – 68.) The state court concluded that trial counsel did elicit some testimony about prior violent incidents but made a reasonable strategic decision to focus

---

[7] *See supra*, Section C.

[8] Within his argument concerning the jury instructions, Petitioner also asserts a vagueness challenge to Maine's self-defense statute, argues that the indictment was insufficient because it did not allege an absence of self-defense, and claims the language used in the jury instructions was so egregious to establish judicial bias requiring a new trial. The judicial bias claim is procedurally barred because it was not exhausted in the state courts, and none of the other arguments has any merit.

on the fear generated from the circumstances of the confrontation, rather than on Petitioner's general fear of violence from Wagner. (Postconviction Decision at 4 – 6.) The state court also determined that trial counsel made a reasonable strategic decision in declining to call other witnesses to testify about Wagner's violent tendencies because the same witnesses would also have provided damaging testimony against Petitioner; the state court further determined that Petitioner did not suffer any prejudice because there was no reasonable probability of a different result even if the additional evidence was presented to the jury. (*Id.* at 6 – 7.)[9] Particularly given that Petitioner's apparent willingness to spend time regularly with Wagner could fairly be viewed as inconsistent with an existing general fear for Wagner, the record establishes that the state court was justified in its conclusions, which were not contrary to or an unreasonable application of clearly established federal law.

### 3. Fear of Portland Police

Petitioner asserts that trial counsel was ineffective for declining to call two additional witnesses to support his testimony about his fear of the Portland Police Department. (Addendum at 14 – 19.) The state postconviction court supportably reasoned that counsel was not ineffective and Petitioner was not prejudiced because he and other witnesses gave ample testimony about the prior incidents and his fear of the Portland Police. (Postconviction Decision at 8 – 10.)

---

[9] Petitioner often argued that it was improper or invaded the fact-finding province of the jury for the state court to assess the chance of a different result had trial counsel made different decisions. That inquiry is required by the prejudice prong of the *Strickland* analysis, and the state court properly cited and applied the "reasonable probability" standard.

Petitioner's primary complaint about his trial counsel's performance concerning the Portland Police evidence is apparently counsel's failure to convince the trial court to admit into evidence a photograph depicting an incident in which police maced and arrested Petitioner. (Memorandum at 68 – 71.) Because Petitioner's challenge to the exclusion of the evidence was decided in his prior appeal, Petitioner is procedurally barred from reasserting the same argument on postconviction review. *See McEachern v. State*, 456 A.2d 886, 889 (Me. 1983) ("Generally, absent an intervening state or federal constitutional mandate, or where the ground claimed could not reasonably have been raised in the earlier action, all issues which were or could have been properly resolved either on direct appeal or on a prior petition for post-conviction relief are barred from subsequent consideration by virtue of 15 M.R.S.A. § 2128(1) and (3).") Furthermore, trial counsel was not ineffective. Petitioner's attorney moved to admit the photograph and opposed the State's efforts to exclude the evidence. The record lacks any evidence that a different argument would have secured the admission the evidence.

### 4. New York Warrant

Petitioner claims trial counsel was ineffective for failing to investigate and introduce into evidence a New York arrest warrant for Wagner. (Addendum at 19 – 20; Memorandum at 72.) The state court supportably determined that Petitioner was not prejudiced by counsel's decisions as there was negligible additional probative value to the evidence because: (1) the parties stipulated that Wagner had another outstanding warrant, (2) there was little evidence that Wagner knew of the warrant, and (3) Petitioner did not know of the warrant so it could not have increased his fear of Wagner. (Postconviction

Decision at 10 – 11.)  The state court's decision was not contrary to or an unreasonable application of clearly established federal law.

### 5. Steak Knife

Petitioner argues that trial counsel should have introduced into evidence the actual or an exemplar steak knife Petitioner claimed Wagner wielded on the night of the shooting. (Addendum at 20 – 23; Memorandum at 72 – 80.)  The state court supportably determined that trial counsel was not ineffective and Petitioner was not prejudiced because the steak knife had little or no probative value. (Postconviction Decision at 11 – 12.)  There is no reliable evidence to suggest that the exact knife Petitioner claims Wagner possessed was preserved as evidence.  To introduce an exemplar likely would have generated questions as to the location of the actual knife and thus whether Wagner actually possessed a knife. In short, the record contains no evidence to suggest a reasonable probability that the introduction of a knife would have generated a different result.  Accordingly, the state court's determination was not contrary to or an unreasonable application of clearly established federal law.

### 6. Interview Witnesses

Petitioner asserts that trial counsel was ineffective for declining to interview two witnesses: (1) Wagner's mother, who testified at the postconviction hearing about Wagner's violent tendencies and who had written Petitioner letters after his arrest but before trial; and (2) Petitioner's uncle, who testified at the postconviction hearing that Petitioner told him on the morning after the shooting that Petitioner had acted in self-defense.  (Addendum at 23 – 27; Memorandum at 80 – 85.)

The state court concluded that because trial counsel provided the letters from Wagner's mother to counsel's private investigator for investigation, and because postconviction record lacked the letters or reliable testimony about the content of the letters, the record failed to establish that trial counsel was on notice of anything requiring further investigation. (Postconviction Decision at 13 – 15.) The state court's decision is supportable given that Petitioner has presented no evidence of the substance of the letters, nor that the testimony of Wagner's mother would have been admissible or would establish a reasonable probability of a different result.

The state court also determined that trial counsel was not ineffective for failing to interview Petitioner's uncle because the uncle's postconviction testimony lacked credibility. That is, although the uncle claimed to have unsuccessfully called trial counsel, he never disclosed the information to anyone before the hearing nor approached counsel at the trial, despite the fact he attended the trial. (Postconviction Decision at 15 – 18.) The state court also noted that the uncle's testimony contradicted Petitioner's trial testimony because Petitioner said he did not tell anyone that he acted in self-defense until he met with his attorney. (*Id.* at 16.) The state court's reasoning was sound.

The state court's determination concerning counsel's effectiveness with respect to the two potential witnesses was not contrary to or an unreasonable application of clearly established federal law.

### 7.     Conflict of Interest

Petitioner claims his trial counsel had a conflict of interest because he shared office space with another attorney who had previously represented Wagner.[10] (Addendum at 27; Memorandum at 85 – 93.) The state court explained that the Maine Board of Bar Overseers advised Petitioner's trial counsel that there was no conflict under their circumstances and the Board subsequently investigated Petitioner's grievance and found no conflict. (Postconviction Decision at 18.) Although Petitioner maintains that his attorney was compromised by the relationship, including in counsel's decision regarding the New York warrant, the record contains no evidence to support Petitioner's assertion. The state court's rejection of the argument is supportable.

Petitioner also maintains a conflict of interest existed because his trial counsel continued to represent him on appeal. Petitioner argues that his attorney could not reasonably be expected to raise on appeal his own errors at trial. Although the law does not require separate attorneys at trial and appeal, *Martinez* and its progeny recognize the difficulty in presenting ineffective assistance of trial counsel claims when the same attorney represents a defendant at trial and on direct appeal. Petitioner suffered no prejudice as a result of the representation, however, because under Maine law he had a full opportunity to present his ineffective assistance of trial counsel claims to the state court on postconviction review with the assistance of different counsel. *See State v. Bellavance*, 2013 ME 42, 65 A.3d 1235, 1240 ("As a general rule, '[w]e do not consider claims of

---

[10] Petitioner maintains that the two attorneys were part of the same law firm, rather than merely in an office sharing relationship with separate assistants and only a shared receptionist. Petitioner, however, has not established that the state court's findings of fact regarding their relationship were unreasonable.

ineffective assistance of counsel on direct appeal; such claims will only be considered after a certificate of probable cause has been issued following a hearing on a post-conviction petition' ") (quoting *State v. Ali*, 2011 ME 122, ¶ 20, 32 A.3d 1019).

Petitioner also argues there was a conflict of interest because trial counsel went to Petitioner's house to investigate and thus allegedly made himself a potential witness. Petitioner has not explained how the after-the-fact investigation increased the likelihood that counsel would become a witness, nor has Petitioner demonstrated that counsel's conduct was improper. In fact, others have argued counsel were ineffective for not conducting site visits. *See e.g.*, *United States v. Holliday*, No. CRIM.A. 02-10343-GAO, 2011 WL 3511471, at *2 (D. Mass. Aug. 11, 2011). The state court's conclusion was not contrary to or an unreasonable application of clearly established federal law.

### 8. Prosecutorial Comments

Petitioner contends that trial counsel was ineffective for failing to object and request curative instructions after certain prosecutorial questions and comments that he argues insinuated that he was lying and intentionally highlighted his post-*Miranda* silence. (Addendum at 28 – 32; Memorandum at 93 – 100.) The state postconviction court reasoned that trial counsel was not ineffective for not objecting to the comments, which the Maine Law Court held on direct appeal were proper.[11] That conclusion was reasonable, particularly given that many of the comments likely did not refer to Petitioner's post-

---

[11] Petitioner characterizes that conclusion as unreasonably deferring to the Law Court's findings, rather than undertaking an independent review of the facts. The state postconviction court merely noted that the Law Court had already analyzed the legality of the comments, but that does not mean the state postconviction court abdicated its duty to conduct an independent review of the facts.

*Miranda* silence, but to his pre-*Miranda* statements, when he told others a different version of events than the self-defense version he presented at trial. The state postconviction court concluded that there was no reasonable probability of a different result had trial counsel made additional objections or requested a curative instruction. The state court's conclusion was not contrary to or an unreasonable application of clearly established federal law.

Petitioner also argues that trial counsel was ineffective for not objecting to comments from the prosecutor insinuating that Petitioner was a part of a gang, the Irish Boyz, which Petitioner maintains was primarily a clothing line. The Irish Boyz questioning was relevant to Petitioner's arguments regarding his paranoia of the police. Petitioner thus has not demonstrated that the trial court would have sustained any such objection. Accordingly, the decision not to object was a reasonable strategic decision, and the state court's summary dismissal of the argument[12] was not contrary to or an unreasonable application of clearly established federal law.

### 9. Expert Witnesses and Further Investigation

Petitioner asserts that trial counsel was ineffective for failing to call expert witnesses on blood spatter analysis to reconstruct the shooting, pathology to analyze the entrance wounds, and forensic toxicology to analyze the effects of mixing an energy drink with alcohol; Petitioner also claims trial counsel should have further investigated his intoxication defense. (Addendum at 42 – 43; Memorandum at 111 – 13.) Petitioner has not shown that such investigation and expert analysis would have in any way enhanced his

---

[12] *See supra*, Subsection C.

defense and thus has failed to demonstrate that any of the potential evidence would generate a reasonable probability of a different result. The state court's summary dismissal of the claims[13] was not contrary to or an unreasonable application of clearly established federal law.

### 10. Cumulative Errors

Petitioner argues that even if none of his other claims is individually sufficient to warrant relief, the cumulative effect of all of trial counsel's alleged deficiencies warrants relief. (Addendum at 44 − 45; Memorandum at 113 − 15.) First, as explained above, the postconviction court supportably determined that counsel's performance was not substandard and thus there are no errors to cumulate. Similarly, the postconviction court supportably determined that even if there were errors, the errors did not create a reasonable likelihood of a different outcome at trial. (Postconviction Decision at 19 − 20.) The postconviction court's findings were not contrary to or an unreasonable application of clearly established federal law.

#### CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within

---

[13] *See supra*, Subsection C.

the meaning of 28 U.S.C. § 2253(c)(2). Petitioner's Motion to Amend (ECF No. 20) is granted.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of November, 2019.